The BANK OF NEW YORK, Executor
of the Estate of Ellen G.
Rionda, Deceased

v.

UNITED STATES of America,
Appellant.

No. 75–1120.

United States Court of Appeals,
Third Circuit.

Argued Sept. 2, 1975.

Decided Nov. 4, 1975.

Riker, Danzig, Scherer & Debevoise,
Newark, N. J., for appellee; Marie L.
Garibaldi, Newark, N. J., of counsel and
on the brief.

Scott P. Crampton, Asst. Atty. Gen.,
Gilbert E. Andrews, Jonathan S. Cohen,
Ann Belanger Durney, Attys., Tax Div.,
Dept. of Justice, Washington, D. C., for

appellant; Jonathan L. Goldstein, U. S. Atty., of counsel.

Before VAN DUSEN, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

For purposes of the federal estate tax, there may be deducted claims against the estate that are paid by the estate and which are founded on promises or agreements, provided that such claims were, in the language of section 2053, "contracted bona fide and for an adequate and full consideration in money or money's worth . . . ."[1]

This appeal poses the question whether the cost to an estate of settling a claim set forth in a lawsuit brought by third-party donee beneficiaries and grounded on an alleged breach of contract to make mutual and reciprocal wills qualifies as a deductible claim under section 2053 when the sole consideration supporting the contract passed between friendly spouses.

## I.

The genesis of this appeal is to be found in wills executed over twenty-five years ago by Manuel E. and Ellen G. Rionda. The Riondas were husband and wife, with no children. In 1948, when Mrs. Rionda had assets of at least $400,-000 and Mr. Rionda had assets of at least $600,000, they each executed a will.

Mr. Rionda's will, dated May 14, 1948, left his entire estate to Mrs. Rionda, but

provided that if she predeceased him, half of his personal effects, specified real estate and stocks, and 24 per cent of his residuary estate should pass to Enrique Ervesun, his second cousin. Further, in that event, 14 per cent of the residuary estate was to go to Mary Ellen Baldwin, the daughter of a family employee.

Mrs. Rionda's will, dated June 2, 1948, was substantially similar. It left her entire estate to Mr. Rionda, but provided, should Mr. Rionda predecease her, for dispositions to Mr. Ervesun, Mrs. Baldwin, and to other legatees identical to the dispositions in Mr. Rionda's will.

When Mr. Rionda died in 1950, his estate of more than $515,000 passed to Mrs. Rionda in accordance with his will of May 14, 1948. Thereafter, however, Mrs. Rionda executed several more wills and codicils before she died in 1966. Her last will was dated August 1, 1963, and was significantly different in its terms from her 1948 will. The primary beneficiaries of her 1963 will were Mrs. Rionda's physician, Dr. John J. Bolton, and his family. Mr. Ervesun was left $5,000 and Mrs. Baldwin was left nothing.

Presumably because they did not have standing as heirs, neither Mr. Ervesun nor Mrs. Baldwin filed a caveat to the probate of Mrs. Rionda's will or appealed from its probate. Each of them, however, swiftly brought suit against Mrs. Rionda's estate in the Chancery Division of the New Jersey Superior Court and these suits were consolidated. The complaints alleged: (a) that in 1948 Mr. and Mrs. Rionda had entered into a contract to make mutual and reciprocal wills,

---

1. Int.Rev.Code of 1954 § 2053 provides in relevant part:

(a) *General rule.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\* \* \* \* \* \*

(3) for claims against the estate, . . .

\* \* \* \* \* \*

as are allowable by the laws of the jurisdiction . . . under which the estate is being administered.

\* \* \* \* \* \*

(c) *Limitations.*—

(1) *Limitations applicable to subsections (a) and (b).*—

(A) *Consideration for claims.*—The deduction allowed by this section in the case of claims against the estate . . . shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth . . . .

each devising substantially all of his estate to the survivor, who was in turn to leave his estate to certain legatees, including Mr. Ervesun and Mrs. Baldwin; (b) that Mrs. Rionda had not devised her estate in accordance with the agreement; and (c) that, consequently, Mrs. Rionda's estate was liable to Mr. Ervesun and Mrs. Baldwin, as third-party beneficiaries, for Mrs. Rionda's breach of the contract to make mutual and reciprocal wills.

The lawsuit was vigorously contested.[2] Then, in 1968 Mr. Ervesun and Mrs. Baldwin filed a second suit in New Jersey Superior Court against the estate, the Boltons, and the Bank of New York as executor, alleging fraud, duress, undue influence, and tortious interference with contract rights.

Trial on the breach of contract action began on September 17, 1968 and was settled the next day, along with the other suit. The settlement provided that Mrs. Rionda's estate would pay $250,000 to the complainants: two-thirds to go to Mr. Ervesun and one-third to Mrs. Baldwin. They, in turn, agreed to release all their claims against the estate and the Boltons, including Mrs. Ervesun's $5,000 legacy under the 1963 will.

Having made payment to Mr. Ervesun and Mrs. Baldwin under the terms of the settlement, Mrs. Rionda's estate filed a claim in April, 1970 for the refund of estate taxes. The estate had paid taxes in excess of $800,000, and sought a refund of more than $100,000 on the basis of the settlement achieved in connection with the claim that had been asserted against the estate. The claim of the estate was disallowed by the District Director of the Internal Revenue Service, and on January 10, 1972, the estate brought this suit for a refund in the district court. Both the estate and the government moved for summary judgment.

The district judge ruled in favor of the estate, finding that the claim was de-ductible under section 2053(a) of the Internal Revenue Code or that, in the alternative, the sum of $250,000 was not includible in the gross estate of Mrs. Rionda. The government has appealed from the judgment of the district court. We reverse.

II.

Challenging the conclusions of the district court, the government emphasizes that to be deductible under section 2053(a)(3) a claim based on an agreement must be contracted for "adequate and full consideration in money or money's worth." The government regards the consideration underlying the claims against the estate by Mr. Ervesun and Mrs. Baldwin as inadequate because the consideration did not proceed from the claimants to the decedent. In addition, even if the consideration supporting the claim need not be given by the claimants, the government submits that the exchange of promises between Mr. and Mrs. Rionda, as embodied in their mutual wills, was not "adequate and full consideration" for the purposes of section 2053 of the Code. To allow such an exchange of promises to constitute "adequate and full consideration," the government declares, would invite tax evasion by arrangements that permit estates to characterize as claims what are actually disguised bequests.

Nor, according to the government, were the claims deductible "as imposed by law," pursuant to section 20.2053–4 of the Treasury Regulations. The ultimate enforceability of the claims in state courts, the government says, is irrelevant. What matters to the characterization of a claim, argues the government, is its origin; a claim is no less an inheritance because it must be enforced by a court after litigation concerning an agreement to make a will.

Finally, addressing the district court's secondary holding, the government contends that the sum received by Mr. Erve-

2. See *Ervesun v. Bank of New York*, 99 N.J. Super. 162, 239 A.2d 10 (App.Div.), *cert. denied*, 51 N.J. 394, 241 A.2d 11 (1968).

sun and Mrs. Baldwin was includible in Mrs. Rionda's gross estate. The district court reasoned that under New Jersey law the existence of mutual wills imposes a constructive trust on the assets of the survivor for the benefit of the legatees under the survivor's reciprocal will. The government believes that the trust is imposed only on the estate of the survivor but not on his assets while he is living. Consequently, at her death Mrs. Rionda owned the $250,000 outright, asserts the government, although immediately thereafter the claims of Mr. Ervesun and Mrs. Baldwin might have imposed a trust on her estate. More fundamentally, the government concludes, the district court erred insofar as it predicated its decision on a premise different from that set forth in the claim for refund, contrary to sections 6402 and 7422 of the Internal Revenue Code.

In response to the government's contentions, the estate maintains that the claims against it were enforceable under New Jersey law and that the district court properly found that there was, as required by section 2053, adequate and full consideration underlying the claims. Such consideration, the estate insists, need not pass from the claimant to the decedent; it is sufficient that the claimants have given consideration or that the decedent has received consideration. In this case, the claims of the third-party donee beneficiaries are founded, according to the estate, on the consideration that Mrs. Rionda obtained in the form of her husband's estate pursuant to their mutual and reciprocal wills. Because both Mr. and Mrs. Rionda possessed substantial estates in 1948, when the promises were made, there can be no question about the adequacy of consideration, the estate maintains.

The estate also regards the claims against it as imposed by law and thus deductible under section 20.2053–4 of the Treasury Regulations. Exceptional circumstances are presented by the facts of this case, the estate urges, permitting it to deduct as a claim what might otherwise be regarded as a nondeductible legacy. In light of the intention of Mrs. Rionda not to devise to the claimants the sum of $250,000 and the spirited skirmish between the estate and the claimants, the estate submits that there is no basis for suspecting subterfuge in this case; the only reason for the estate to pay the claim was to settle an enforceable cause of action advanced against it.

Alternatively, the estate would have us affirm the holding of the district court that the $250,000 was not a part of the gross estate of Mrs. Rionda, because, under the laws of New Jersey, her taking pursuant to her husband's reciprocal will imposed a constructive trust upon her estate which denied her the power to dispose of the property. Given the government's awareness of the facts necessary to establish the claim for refund and the language of that claim, which makes reference to "determining the taxable estate," the estate contends that there is no merit in the government's argument that this basis for decision is not founded on the estate's original claim for refund.

### III.

In our view of the matter, the pivotal issue in this appeal is whether the consideration that supported the claims against Mrs. Rionda's estate satisfied the requirements of the Internal Revenue Code. Section 2053 permits the deduction of claims against the estate, subject to the limitations that claims bottomed on promises or agreements must be "contracted bona fide and for an adequate and full consideration in money or money's worth." It is our conclusion that the claims paid by the estate in this case, even if supported by consideration adequate to make them enforceable under the law of New Jersey, do not meet the statutory requirements for a deduction under section 2053. Because we decide this issue in favor of the government, we do not address the government's other contention that the consideration must have proceeded from the claimants to the decedent to satisfy the requirements of the Code.

Claims against the estate advanced by Mr. Ervesun and Mrs. Baldwin were based on Mrs. Rionda's alleged agreement with her husband to make mutual and reciprocal wills. The government does not deny that these claims were colorable. Rather, the issue between the government and the estate is whether the consideration underlying the agreement was "adequate and full" and "in money or money's worth."

The estate contends that the consideration on which a New Jersey court would rely to declare enforceable Mrs. Rionda's agreement with her husband to make mutual wills was "adequate and full consideration in money _ or money's worth", as required by the Code. We need not rest our decision on an interpretation of the New Jersey law regarding consideration in mutual wills.[3] To decide this appeal, the Court must look to the federal law of estate taxation.[4]

One purpose of the consideration provisions of section 2053 is to prevent the depletion of the estate for estate tax purposes by transfers couched in contractual form but serving a donative intent.[5] Transactions among members of a family have been particularly subject to scrutiny in this regard, even when they have been supported by monetary consideration. Although there are no cases squarely on point, an examination of the decisions, including those in cognate areas of tax law, permits the inference that the value of the claim settled by the estate may not be deducted if the agreement on which the claim was based was not bargained at arm's length.[6]

The authorities upholding the deductibility of claims against the estate appear to involve the sort of agreements that

---

**3.** *Tooker v. Vreeland,* 92 N.J.Eq. 340, 112 A. 665 (Ch.), *aff'd per curiam,* 93 N.J.Eq. 224, 115 A. 255 (E.&A.1921), the leading New Jersey case on mutual wills, identifies the consideration underlying such wills as "the inducement held out by the one to the other to mutually testate, in the reciprocal gifts [provided for in the wills], and the execution of the contract on the part of [the first to die], by his unrevoked will at the time of his death." *Id.* at 345, 112 A. at 667–68. Under these principles the first two elements of. the consideration held out to Mrs. Rionda would both be found in the promise of Mr. Rionda that he would leave her the unconsumed portion of his estate or that, should he survive her, he would bequeath his estate to specified legatees. Mr. Rionda's promises, however, do not seem to have had determinable value, because it would have been possible, between the time the promises were exchanged and the time of his death, for Mr. Rionda to dissipate his entire estate.

When Mr. Rionda died without having revoked his mutual will, the consideration was completed. The requirement of law, however, appears to have been satisfied by his act itself, leaving the unrevoked will, rather than by the value of the estate that the will distributed. The actual value of the estate may be relevant only in that enjoyment of the gift by the surviving mutual testator constitutes "that part performance [by the survivor] which takes [an] oral contract out of the statute of frauds." *Tooker,* 92 N.J.Eq. at 345, 112 A. at 668.

**4.** *See United States v. Stapf,* 375 U.S. 118, 131, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963); *Taft v. Commissioner,* 304 U.S. 351, 355–57, 58 S.Ct. 891, 82 L.Ed. 1393 (1938). *Cf. Commissioner v. Wemyss,* 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1945).

**5.** *See In re Estate of Hartshorne,* 402 F.2d 592, 594 n. 4 (2d Cir. 1968); *Latty v. Commissioner,* 62 F.2d 952, 953 (6th Cir. 1933); H.Rep. No. 2333, 77th Cong., 2d Sess. 169 (1942) (reprinted in 1942–2 Cum.Bull. 372, 493); S.Rep. No. 1631, 77th Cong., 2d Sess. 238 (1942) (reprinted in 1942–2 Cum.Bull. 504, 679).

**6.** *See Helvering v. Robinette,* 129 F.2d 832 (3d Cir. 1942), aff'd, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700 (1943) (gift tax); *Phillips v. Gnichtel,* 27 F.2d 662 (3d Cir.), *cert. denied,* 278 U.S. 636, 49 S.Ct. 33, 73 L.Ed. 553 (1928) (gift in contemplation of death); *Estate of Pollard v. Commissioner,* 52 T.C. 741, 744 (1969) (dictum).

Although the cases state this requirement in terms of the "adequacy" of the consideration and the policies of the estate tax, the statutory basis for requiring an arm's length bargain would seem to be the requirement of a "bona fide" contract. *See Estate of Goetchius,* 17 T.C. 495, 503 (1951) (computation of the gross estate), *citing, inter alia,* Treas.Reg. 79, art. 8, at 15 (1939) (gift tax), which provided: "A bona fide transaction is one which is at arm's length, and free from any donative intent."

arise between parties separated by divergent interests.[7] The clearest cases are those like *Beecher v. United States*,[8] which deal with settlements between estranged spouses. It is reasonable to assume that each element of the agreement in such situations contains advantages bargained for by concessions on other matters, so that the final accord reflects a trade-off between the rights of each party. Even a family agreement, although achieved without apparent bitterness, has been regarded as bargained for when members of the family had interests contrary to those of other members of the family.[9] Where legal rights of family members are in conflict, each member may have to surrender rights he would otherwise keep in order to secure rights that he wishes to obtain. To classify this sort of family arrangement as an arm's length bargain seems within the compass of reasonableness.

That type of bargained-for arrangement among contending family members is substantially different from the situation with which we are dealing in this case. It would appear that Mr. and Mrs. Rionda were of one mind when they made their mutual wills; they agreed that the estate of the first to die should go to the survivor and then to certain specified legatees. The purpose of their mutual wills was simply to make the ultimate disposition of the property in effect irrevocable, which was to the advantage of each of them. There is nothing in the record to support a finding that the mutual wills here were executed as the result of an arm's length bargain of any sort.

When the interests of family members are not divergent but coincide so that the elements of a transaction advance the separate concerns of each, we are unable to find the arm's length bargain mandated by the Code. This Court has adhered to the distinction between family arrangements bargained for at arm's length and family arrangements that reflect a community of interests. Tax advantages are not permitted when an agreement between members of a family could be regarded as a cooperative attempt to make a testamentary disposition rather than as an arm's length bargain.[10]

To effectuate the policy underlying the federal estate tax requires that courts look beneath the surface of transactions to discover the essential character of each transfer. Even where a claim is ultimately satisfied by the operation of law, the courts will determine the nature of the claim for federal tax purposes by examining the particular status of the claimant that enabled him to impose his claim on the estate.[11]

In this case the initial intention of both Mr. and Mrs. Rionda was to make a gift, first to the survivor of them, but

---

7. In cases where the decedent has guaranteed a loan to a third party, the consideration that is the basis for the creditor's claim against the estate has passed at arm's length between the creditor-claimant and a third party. When allowing deductions for such claims, courts have inquired into the bona fide nature of all aspects of the transaction. Courts do not allow a deduction if it appears that the guarantor had intended to make a disguised gift to the debtor in the form of a guaranty. The deductibility of the creditor's claim seems to hinge on the guarantor's having had a reasonable expectation when he made the guaranty that the debtor would not default. *DuVal's Estate v. Commissioner*, 192 F.2d 103 (9th Cir. 1945), *cert. denied*, 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1613 (1946); *Commissioner v. Wragg*, 141 F.2d 638 (1st Cir. 1938); *Commissioner v.*

Porter, 92 F.2d 426 (2d Cir. 1937); *Carney v. Benz*, 90 F.2d 747 (1st Cir. 1937).

8. 280 F.2d 202 (3d Cir. 1960); *Leopold v. United States*, 510 F.2d 617 (9th Cir. 1975).

9. *People's First Nat'l Bank & Trust Co. v. United States*, 241 F.2d 420 (3d Cir. 1957) (computation of the gross estate).

10. Compare *People's First Nat'l Bank*, 241 F.2d 420 (3d Cir. 1957) *with Helvering v. Robinette*, 129 F.2d 832 (3d Cir. 1942), *aff'd*, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700 (1943).

11. Compare *Lyeth v. Hoey*, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) *with Beecher v. United States*, 280 F.2d 202, 204 (3d Cir. 1960). *Cf. Harris v. Commissioner*, 340 U.S. 106, 111, 71 S.Ct. 181, 95 L.Ed. 111 (1950).

ultimately to certain third parties. Without an arm's length bargain and absent consideration in money or money's worth, Mr. and Mrs. Rionda entered into a mutual will arrangement to make those gifts secure. That Mrs. Rionda may have been obliged by New Jersey law to carry out her original purpose, despite her change of mind, does not alter the nature of her original intention. Mr. Ervesun and Mrs. Baldwin were required to proceed by an action at law in order to secure recovery, but there can be no doubt that the basis of their claims was the friendly agreement between Mr. and Mrs. Rionda to make a gift, and the status of Mr. Ervesun and Mrs. Baldwin under the agreement was that of donees. The policy of section 2053 is to deny a deduction where the underlying transaction was "essentially donative in character." [12]

Although there is no reason to suspect that the original intent of the Riondas, or that the final intention of Mrs. Rionda, was to establish a situation permitting the evasion of estate taxes, to sanction a deduction in this type of case could encourage tax avoidance.[13] Some persons might be tempted to renege on irrevocable mutual wills in the hope that their intended beneficiaries would then take as claimants rather than as heirs, to the tax advantage of the estate.

## IV.

Two issues remain in this appeal, but they do not require extensive commentary.

The estate has defended the deductibility of the claims on the alternative basis of section 20.2053-4 of the Treasury Regulations. That regulation provides, *inter alia,* that: "Liabilities imposed by law or arising out of torts are deductible." The estate reasons that Mrs. Rionda did not propose, at the time of her death, to make a gift to Mr. Ervesun and Mrs. Baldwin; the amounts paid to them by the estate were in settlement of a contested lawsuit; thus the claims were imposed by law and deductible under section 20.2053-4. Such reliance on the regulation is misplaced.

■ If the deduction of the claim against the estate cannot be upheld on the basis of the statute, it cannot be upheld on the basis of the Treasury Regulation promulgated pursuant to that statute. Treasury Regulations must be interpreted in the context of the statute they are designed to explicate; "there is no power to amend [a statute] by regulation." [14]

■ Section 20.2053-4 is itself quite explicit that claims founded on a promise or on an agreement are limited to the extent that the liability was "contracted bona fide and for an adequate and full consideration in money or money's worth," a provision identical to that in the statute. The subsequent sentence, on which the estate would rely, must be taken to refer to claims imposed by law other than those founded on promise or agreement.[15] As such, it is inapposite in the circumstances of this case.

---

12. *See* legislative history cited in note 5 *supra.*

13. *See In re Estate of Hartshorne,* 402 F.2d 592, 594 n. 2 (2d Cir. 1968).

14. *Koshland v. Helvering,* 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936). *See United States v. Calamaro,* 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957).

15. This distinction of obligations arising from promises and agreements and other obligations imposed by law is confirmed by the legislative history of the limitation of section 2053.

That limitation was described as a clarifying provision limiting the consideration requirement to "liabilities founded on contract." This was regarded as necessary to avoid the erroneous interpretation that all claims, even if imposed by law or arising out of torts, must be supported by adequate and full consideration.

*See* H.Rep. No. 708, 72nd Cong., 1st Sess. 48 (1939) (reprinted in 1939-1 Cum.Bull. (Part 2) 457, 491); S.Rep. No. 669, 72d Cong., 1st Sess. 51 (1939) (reprinted in 1939-1 Cum.Bull. (Part 2) 496, 933).

A final ground put forth by the estate for upholding the judgment of the district court is that Mrs. Rionda's power over the property received from the estate of Mr. Rionda, the unconsumed portion of which she was obligated to pass on to Mr. Ervesun and Mrs. Baldwin, was not sufficient to warrant its inclusion in the gross estate.

Whatever its merit, this rationale is not available to the taxpayer in the present proceeding. It has been established that "in the absence of a waiver by the government . . . or a proper amendment, petitioner [will be] precluded . . . from resting its claim on another ground [as distinguished from those advanced in the claim for refund.]" [16] An examination of the original claim in this case reveals that the estate asserted entitlement to a "deduction of $250,000 . . . in determining the taxable estate for the purposes of the federal estate tax."

A mere reference to the taxable estate is not sufficient to advance a claim regarding the calculation of the gross estate. Moreover, a claim for a refund based on a deduction would appear to concede that the amount in question was a part of the gross estate. No theory regarding the size of the gross estate was set forth in any way in the refund claim. That being so, there cannot now be used to support an order permitting a refund a theory based on the recalculation of the gross estate.

Accordingly, the judgment of the district court will be reversed.

---

16. *Real Estate-Land Title & Trust Co. v. United States*, 309 U.S. 13, 17–18, 60 S.Ct. 371, 84 L.Ed. 542 (1940); *Fidelity-Philadelphia Trust Co. v. United States*, 222 F.2d 379, 382 (3d Cir. 1955); Int.Rev.Code of 1954 §§ 6402, 7422(a).