**ESTATE of Franklin A. MORSE, Deceased, the First National Bank of Southwestern Michigan, Administrator, Plaintiff-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

**No. 78–1352.**

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1980.

Decided July 18, 1980.

---

James F. Thornburg, Stephen A. Seall, Thornburg, McGill, Deahl, Harmen, Carey & Murray, Brian Lake, Thomas Schoaf, South Bend, Ind., for plaintiff-appellant.

M. Carr Ferguson, Richard Perkins, Asst. Attys. Gen., Gilbert E. Andrews, Mary Jennings, Tax Division, U. S. Dept. of Justice, Washington, D. C., Stuart E. Seigel, Chief Counsel, I. R. S., Washington, D. C., for defendant-appellee.

Before MERRITT, BROWN and JONES, Circuit Judges.

PER CURIAM.

Appellant, Estate of Franklin A. Morse, appeals a decision of the Tax Court (69 T.C. 408) denying a deduction to the estate for federal estate tax purposes. We conclude that the decision of the Tax Court was correct and therefore affirm.

The decedent, Franklin A. Morse, became a widower and Lucile H. Zimmer became a widow in their later years and, being old friends, Franklin began to court Lucile to the point that they contemplated marriage. Franklin's home was in South Bend, Indiana and Lucile's was in nearby Niles, Michigan. Lucile was a beneficiary of two trusts under her deceased husband's will, one of which would terminate and the corpus distributed to her children upon her remarriage, and this gave her concern. There was a question as to where they would live in the event of their marriage, and since Franklin indicated his reluctance to take Lucile away from her friends in Niles, they ultimately agreed that they would live in her home in Niles. When they got together to formulate their antenuptial agreement, Franklin's lawyer pointed out that since Franklin had agreed to provide $12,000 per year income to Lucile in the event she survived him (to replace the income from the trust Lucile would lose upon their marriage), it was fitting that Lucile reciprocate by granting Franklin a life estate in her home in Niles in the event that he survived her. Lucile ultimately agreed to this, and the antenuptial agreement did provide, in summary, that Franklin would effectively arrange that Lucile would have $12,000 income each year if she survived him, and that Lucile would grant to Franklin a life estate in her home and furnishings at Niles if he survived her.

Thereafter Lucile did grant to Franklin a life estate in the home in the event he survived her, and Franklin, by an irrevocable, inter vivos trust to which he transferred assets, provided that the trust would pay the income therefrom to him for life, then to pay $12,000 each year to Lucile for life, any excess to go to his children. Franklin also concurrently executed a will devising his net estate to the trust to be disposed of in accordance with its terms.

Shortly after entering into these antenuptial arrangements in 1967, Franklin and Lucile were married and lived in her home at Niles except for the time they spent at her summer place at Walloon Lake, Michigan. Lucile paid most of the taxes and insurance and maintenance expenses on the homes from her separate checking account, and Franklin paid some of the living expenses and occasionally gave money to Lucile that she deposited to her account.

Franklin's estate, after he died in 1972, sought to deduct, for federal estate tax purposes, the then present value of the obligation to pay Lucile $12,000 for life ($110,-387) as a debt of the decedent. The Commissioner denied the deduction, the Tax Court redetermined the deficiency, and the estate brought this appeal. The Commissioner contends that the obligation to pay Lucile the $12,000 each year for life is not a claim against the estate within the meaning of § 2053(a)(3) of the Internal Revenue Code of 1954 and particularly that it is excluded as a deduction under the terms of § 2053(c)(1)(A) since it is not founded on a promise or agreement that was ". . . contracted bona fide and for an adequate and full consideration in money or money's worth . . ."

Prior to the hearing in the Tax Court, it was the position of the estate that the consideration for the agreement was the detriment to Lucile in her losing the income from the trust established by her first husband or the life estate in the home created by Lucile in favor of Franklin in the event he survived. Apparently the estate determined that such consideration could not, under the authorities, support the estate tax deduction, and in the Tax Court it was the estate's only contention that the consideration was Franklin's having lived with Lucile in her home without paying rent.

The Tax Court determined that Franklin's living in the home could not be considered, for present purposes, to be the consideration for the promise to provide for Lucile unless it was so bargained for, and the Tax Court further found that it was not so bargained for. We believe that the Tax Court was correct in ruling that it was necessary to show that such consideration was so bargained for (see, for example, *Bank of New York v. United States*, 526 F.2d 1012 (3rd Cir. 1975)), and the estate seems to agree to this legal proposition. The estate contends, however, that the Tax Court made an error of law in applying a subjective rather than objective test in determining whether Franklin's living in the home rent free during their marriage was a bargained for exchange for his promise to provide a yearly income to Lucile. We conclude that the Tax Court considered the matter both subjectively and objectively and determined that Franklin's living in the home without paying rent was not the bargained for exchange for such obligation, and we conclude that the Tax Court was not clearly erroneous on either theory. Indeed the testimony and the antenuptial agreement make it clear that, subjectively or objectively, the only bargained for exchange was Lucile's obligation to grant Franklin a life estate in the home in the event he survived.

The decision of the Tax Court is therefore affirmed.