**Mary Helen PARKER and Jean Parker Griffith, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–17347.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1996.

Decided March 31, 1997.

Dale Beck Furnish, Tempe, Arizona, for plaintiffs-appellants.

Theodore Doolittle, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before: SKOPIL and FLETCHER, Circuit Judges, and RHOADES,* District Judge.

RHOADES, Senior District Judge:

Appellants Mary Helen Parker and Jean Parker Griffith appeal from the decision of the district court granting summary judgment in favor of the United States. Appellants brought a refund claim for $90,000 in estate taxes paid by the estate of Appellants' deceased stepfather, Edward Allison ("Stepfather").[1] The taxes were paid from the corpus of a settlement trust of which Appellants were beneficiaries. The district court held that the doctrine of equitable recoupment applied, allowing the Government to retain the erroneously-paid tax. We reverse and hold that equitable recoupment is not available to the Government in this case.

*Background*

Appellants are the remaining heirs of Eleanor Landon Parker Allison ("Mother"). Mother died in February of 1971. In 1972, Appellants sued Stepfather and the United States Trust Company of New York ("UST"), alleging embezzlement of funds from Mother's separate assets and breach of fiduciary duties in relation to a testamentary trust created by Mother for Appellants.[2] Appellants' action against Stepfather was settled in 1975. Under the terms of the settlement, Stepfather and UST paid Appellants $125,-000, and Stepfather created a $325,000 settlement trust ("Trust"), the income from which was paid to Stepfather during his life, the remainder to be paid to Appellants upon Stepfather's death.

Stepfather died in 1985. At the request of the executor of Stepfather's estate, and over the protests of Appellants, the trustee paid $90,000 in estate taxes owed on Stepfather's estate from the corpus of the Trust.[3] Following the estate tax payment, Appellants filed a timely claim for refund with the IRS, arguing that the Trust was not includable in Stepfather's estate because it was established in settlement of hostile litigation and was therefore a "bona fide sale," excludable under the exceptions to I.R.C. §§ 2036 and 2038.[4] The IRS disallowed the claim, finding

---

* The Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation.

1. Edward Allison was actually appellant Mary Helen Parker's stepfather-in-law. Because the distinction is not relevant, we will refer to Edward Allison simply as "Stepfather."

2. Mother's son was also a beneficiary of the trust. He died in 1985 and is not a party to this action.

3. The Trust itself was not directly taxed. The only reason that a portion of Stepfather's estate tax liability was paid from the assets of the Trust was that the parties had agreed that, to the extent the corpus of the trust was includable in Stepfather's gross estate, the additional estate tax resulting from its inclusion would be paid from Trust assets.

4. In pertinent part, I.R.C. § 2036 provides:
   (a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate

and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
   (1) the possession or enjoyment of, or the right to the income from, the property, or
   (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.
   In pertinent part, I.R.C. § 2038 provides:
   (a) In general.—The value of the gross estate shall include the value of all property—
   (1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such

that all parties to the Trust had contemplated that the trust would be includable in Stepfather's estate. Appellants then filed a suit for refund in the district court.

The Government moved to dismiss the suit on the ground that Appellants failed to timely effect service upon the Government in the manner required under Fed.R.Civ.P. 4(i). In the alternative, the Government argued that dismissal was required because Stepfather's estate was the proper party to bring a claim for refund and, therefore, that Appellants did not have standing. Appellants then filed a summary judgment motion, arguing that the Trust was excludable under the "bona fide sale" exception to I.R.C. § 2036(a). The Government filed a cross-motion for summary judgment, reasserting the contentions of its then-pending motion to dismiss, and adding the affirmative defense of equitable recoupment. The district court considered all motions together.

Initially, the district judge noted that under new Fed.R.Civ.P. 4(m), dismissal for failure to timely effect service was discretionary, and that the new rule could be applied to cases pending at the time of its effective date when "just and practical." Because Appellants were unemployed senior citizens who were unable to retain a tax lawyer, the district judge found that dismissal was not warranted. The district judge also found that Appellants had standing to seek a tax refund on the authority of *Williams v. United States,* 24 F.3d 1143 (9th Cir.1994), *affirmed,* 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). Thus, as to the issues originally raised in the Government's motion to dismiss, the district judge held in favor of Appellants. The Government does not contest this holding on appeal.

The district judge then addressed the Government's equitable recoupment argument. In its cross-motion for summary judgment, the Government argued that Appellants were not entitled to a refund because the value of the Trust, if not part of Stepfather's estate, was part of Mother's

estate. The Government claimed that taxes due from Mother's estate greatly exceeded the $90,000 Appellants were attempting to recover. Appellants argued that the Government waived the equitable recoupment defense when the IRS failed to pursue the evidence of Stepfather's fraud submitted by Appellants in 1975. Appellants further argued that equitable recoupment was not available to the Government in this case, particularly because application of the doctrine would lead to the inequitable result of taxing the innocent parties and exempting the wrongdoer. Relying on *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), the district judge ruled that the Government was entitled to equitable recoupment. The district judge rejected Appellants' estoppel argument finding that Appellants had not submitted sufficient evidence detailing the notice given to the IRS of Stepfather's fraud.[5] The district judge also found that Appellants failed to demonstrate how the IRS' inaction had adversely impacted them because the 1972 case against Stepfather had been settled, with Stepfather paying $325,000 into the settlement trust. Furthermore, the district judge found that, assuming the IRS could have helped Appellants had it pursued their allegations of fraud, he was unaware of any case law holding that inaction by the IRS constitutes a waiver of the government's right to raise the equitable recoupment defense. Accordingly, the district judge granted the Government's summary judgment motion, denied Appellant's summary judgment motion, and denied as moot the Government's motion to dismiss.

Appellants filed a timely motion for reconsideration on February 21, 1995, arguing for the first time that equitable recoupment did not apply because the case did not involve a single transaction or an identity of interest as required under the doctrine. Appellants also argued that they did not concede, as stated by the district judge in his order, that the Trust should have been included in Mother's

---

power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3–year period ending on the date of the decedent's death.

5. Appellants presented the district court with the table of contents of a binder given by them to the IRS and a letter from the IRS stating that the audit of Mother's estate was closed.

estate when not taxed in Stepfather's estate. The district judge denied Appellants' motion for reconsideration, again finding that equitable recoupment applied. The district judge reasoned that the case involved a single transaction, the taxation of the settlement trust, and that the requisite identity of interest was present because the parties seeking a refund were the same parties who received the benefit of a larger inheritance when Mother's estate was not taxed. The district judge also rejected Appellants' renewed argument that equitable recoupment should not apply because the IRS failed to investigate the claims of Stepfather's fraud. Finally, the district judge rejected Appellants' contention that the Trust should not have been taxed at all. The district judge agreed with the Government that the Trust was includable in Mother's estate under I.R.C. § 2033 because at the time of her death, Mother had a cause of action against Stepfather for his fraudulent conveyances. The court found that Appellants' power to pursue litigation against Stepfather arose from their capacity as beneficiaries of Mother's estate, and that Mother's claim was converted into a sum certain by settling the suit for $325,000.

*Discussion*

■ This court reviews a grant of summary judgment de novo, employing the same standard used by the trial court under Fed. R.Civ.P. 56(c). *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994); *Suitum v. Tahoe Regional Planning Agency,* 80 F.3d 359, 361 (9th Cir.), *cert. granted,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). The Court must view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996).

Generally speaking, when a decedent transfers property while retaining a life estate, the value of the property so transferred is included in the decedent's gross estate under I.R.C. §§ 2036 and 2038. Sections 2036 and 2038, however, create an exception where the transfer qualifies as a "bona fide sale for adequate and full consideration in money or money's worth," because in this situation, the decedent's estate is enriched by the consideration returned for the transfer, and the total value of the estate does not vary. Appellants argue that the release of their claims against Stepfather in return for Stepfather's creation of the Trust qualified as a "bona fide sale" under §§ 2036 and 2038 because Stepfather's estate was enriched through the settlement of the litigation by the same amount that was paid out to create the Trust. Thus, Appellants maintain that when the $90,000 tax was paid from the settlement trust, Stepfather's estate was subjected to double taxation, thereby thwarting the purpose of the statutory exceptions.[6] The Government concedes that the Trust was not includable in Stepfather's estate. The district court likewise found that the Trust was erroneously taxed as part of Stepfather's estate.[7]

---

6. The Appellants' contention that the settlement of litigation qualifies as a bona fide sale under §§ 2036 and 2038 finds support in out-of-circuit and district court case law. *See, e.g., Peoples First Nat'l Bank & Trust Co. v. United States,* 241 F.2d 420, 424 (3d Cir.1957) (holding that an agreement between siblings, wherein one sibling gave up certain rights to property received under the father's will but received other rights, and the other siblings received as a benefit the freeing of the property from a lien placed on it by the father's will, constituted a bona fide sale for an adequate and full consideration in money or money's worth); *Council v. United States,* 302 F.Supp. 1315, 1324 (N.D.Miss.1969) (holding that the cancellation of a mutual will by the decedent in settlement of litigation constituted a bona fide sale within the meaning of I.R.C. § 2036, such that property held by decedent in life estate and conveyed to her husband in same upon her death and thereafter to her brother's children under the terms of the settlement, was not includable in the estate of the decedent); *but see United States v. Past,* 347 F.2d 7, 12 (9th Cir.1965) (finding that, in terms of a trust created as part of a property settlement incident to a divorce, the fact that some property was transferred into the trust was not enough to qualify as adequate and full consideration, and holding that the value received by the decedent under the trust must be measured against the value of the property transferred into the trust).

7. Given the complete agreement that the Trust was not includable in Stepfather's gross estate, we need not further address this issue.

Upon finding that the Trust was improperly included in Stepfather's estate, the district court agreed with the Government's argument that Mother's estate should have been taxed. Appellants argue that this holding was in error because Stepfather's estate was taxed and, therefore, inclusion of the Trust in Mother's estate would result in double taxation. However, because we ultimately reject on other grounds the Government's claim that it is entitled to retain the $90,000 paid in taxes, we need not decide Appellants' double taxation contention that Stepfather's estate has already paid the tax and therefore Mother's estate cannot also be taxed. Even accepting the Government's position that Mother's estate should have been taxed, we conclude that the Government's claim against Mother's estate is time barred and that the bar cannot be circumvented by application of the doctrine of equitable recoupment.

*Equitable Recoupment*

Although the Government concedes that the Trust should not have been included in Stepfather's estate, the Government invokes the affirmative defense of equitable recoupment, arguing that Appellants unjustly benefitted when the Trust escaped taxation in Mother's estate. The district court agreed. Appellants dispute this finding on several grounds, both procedural and substantive.

■ Preliminarily, Appellants argue that under Fed.R.Civ.P. 8(c) and 12(g), the Government waived its right to seek equitable recoupment by failing to assert the defense in its motion to dismiss.[8] Rule 8(c) states that "[i]n pleading to a preceding pleading, a party shall set forth ... any other matter constituting ... an affirmative defense." Pursuant to Rule 12(g), when a party brings a motion under Rule 12, all defenses then available to the party and which may be brought by a Rule 12 motion must be raised in the motion or be lost.

According to Appellants, the Government's Rule 12 motion was a responsive pleading and, by bringing the motion, the Government waived all defenses not raised therein. However, Appellants misconstrue the rules. Except in limited circumstances, a motion is not regarded as a pleading. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1190 (1990).[9] As argued by the Government, the Rule 12 motion was filed prior to filing an answer, and therefore before any responsive pleading had been made. Furthermore, Rule 12(g) refers to defenses which may be raised by a Rule 12 motion, not to all defenses, and there is even some authority for the proposition that an affirmative defense may not be raised by a motion to dismiss. *Id.* at § 1277.

The Government raised the equitable recoupment defense in its cross-motion for summary judgment, before answering, and while its motion to dismiss was still pending. Appellants had ample opportunity to respond to this defense in their reply to the cross-motion and in their motion for reconsideration. Therefore, Appellants suffered no prejudice and the Government did not waive the defense.

■ The doctrine of equitable recoupment prevents unjust enrichment and works as a setoff when invoked by the taxpayer to recover taxes paid twice, or by the government to prohibit tax avoidance. *Kolom v. United States,* 791 F.2d 762, 767–68 (9th Cir.1986), *overruled on other grounds, United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). The doctrine was first applied by the Supreme Court in *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), to allow a taxpayer to assert a time-barred estate tax refund claim as a defense to a timely income tax deficiency claim. Two years after *Bull* was decided, the doctrine was effectively invoked by the government in *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937).

---

8. Appellants raised the waiver argument in their motion for reconsideration, and the district court found that it was appropriate for the Government to assert the recoupment defense in its cross-motion for summary judgment.

9. The text of Fed.R.Civ.P. 7 indicates that pleadings and motions are considered separately under the rules. Rule 7(a) provides an exclusive list of acceptable pleadings, while Rule 7(b) describes motions as the vehicle by which a party applies to the court for an order.

In *Stone,* the income beneficiary of a testamentary trust, relying on applicable case law at the time, did not include the income distributed to her from the trust in her 1928 federal income tax return. In response, the government asserted a deficiency claim against the trust, which had claimed a deduction for the distribution to the income beneficiary. The trustees paid the deficiency. After a Supreme Court decision made it clear that the 1928 distribution should have been included as income to the beneficiary (and, hence, that the trust was entitled to the distribution deduction), the trustees brought a timely suit for refund of the deficiency payment. While acknowledging the distinction between the taxpayers (i.e., the trust and the beneficiary), the Supreme Court found a sufficient identity of interest between the two to allow the government to use the greater, but time-barred deficiency of the beneficiary to deny the trustees' lesser, but timely refund claim. *Id.* at 535–39, 57 S.Ct. at 852–55.

Following *Bull* and *Stone,* the Supreme Court disallowed the use of equitable recoupment as a defense in *McEachern v. Rose,* 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), and *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). In *McEachern,* the Court rejected the government's attempt to use a time-barred tax overpayment from a previous year as a defense to a timely claim for refund by the taxpayer for subsequent years. In *Rothensies,* the taxpayer attempted to use a time-barred claim for refund of excise taxes as a defense in the taxpayer's suit for refund of income taxes timely assessed by the government. The Court disallowed the claim, stating that equitable recoupment was applicable to a single taxable event and was not intended to allow one transaction to be offset against another. *Id.* at 300–01, 67 S.Ct. at 272–73.

█ The limited scope of equitable recoupment was established in the Supreme Court's decisions in *Bull, Stone* and *Rothensies:*

> The doctrine of equitable recoupment applies if "a single transaction constitutes the taxable event claimed upon and the one considered in recoupment." The single

transaction must also be subject to two taxes based on inconsistent legal theories. Finally, the amount claimed in recoupment must be barred by the statute of limitations, while the asserted deficiency by the government [or the refund claimed by the taxpayer] must be timely.

*Kolom,* 791 F.2d at 767 (first alteration in original) (citations omitted) (quoting *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272); *see also Harrah v. United States,* 77 F.3d 1122, 1125 n. 6 (9th Cir.1995). In addition to these requirements, if the subject transaction involves two or more taxpayers, equitable recoupment will not be available unless a sufficient identity of interest exists so that the taxpayers should, in equity, be treated as a "single taxpayer". *Stone,* 301 U.S. at 537–38, 57 S.Ct. at 853–54; *Kolom,* 791 F.2d at 768; *Estate of Vitt v. United States,* 706 F.2d 871, 875 n. 3 (8th Cir.1983).

█ The district court found that one transaction was involved in both Appellants' timely refund claim and the Government's time-barred claim against Mother's estate, namely, taxation of the Trust. Appellants argue that equitable recoupment cannot apply to this case because it involves the tax treatment of two separate estates, rather than a single transaction or taxable event. We agree that the Government's failure to tax Mother's estate, and the trustee's erroneous payment of taxes on Stepfather's estate from the Trust, involve separate transactions.

In holding that the Government was entitled to equitable recoupment, the district court relied heavily on *Stone.* Upon finding that Mother's estate should have paid the tax, and that Appellants (as Mother's heirs) would ultimately have borne this burden, the district court held that there was a sufficient identity of interest to enable the Government to effectively assert the doctrine of equitable recoupment. While the district court's reasoning has a certain palpable logic, we cannot agree that this case arises from a single transaction involving a single taxpayer, nor that a single transaction was subject to inconsistent tax treatment.

In its most recent substantive analysis of equitable recoupment, and while noting the

"limited scope" of the doctrine, the Supreme Court declared that equitable recoupment "permit[s] a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272. This pronouncement, however, does not mean that courts should lump together related, but nonetheless separate transactions so that the facts of a case can be viewed as "one transaction as a whole." In so doing, a court risks bringing about the "all but intolerable" circumstance of having a "tax system under which there would never come a day of final settlement." *Id.* at 301, 67 S.Ct. at 273. As this Court has explained:

> There exists no statute or principle in tax law that requires either, for example, a "decennial" or "lifetime" adjustment of taxes requiring either refunds or additional taxes [to produce] a harmonious and consistent application of taxes throughout the selected time frame. Any such principle would not only complicate the record-keeping responsibilities of both the taxpayers and the government, but would also very likely prove less advantageous to the taxpayers than to the government.

*Harrah,* 77 F.3d at 1125. In the instant case, the district court erroneously combined two or more separate transactions and analyzed them under the guise of "taxation of the Trust." Indeed, we have thus far spoken only of the tax treatment of "the Trust". But to see why this case is not simply about a single transaction involving a single taxpayer, a deeper analysis is required.

Recall that the Trust was created some four years after Mother's death and that neither Mother nor her estate was a party to the Trust. It was not the creation of the trust that gave rise to the tax liability that the Government now claims exists with respect to Mother's estate. The liability of Mother's estate exists because, when Mother died, she possessed a valuable right: a claim against Stepfather for conversion, embezzlement, and breach of fiduciary duty. Whether the "transaction" resulting in the tax liability of Mother's estate be viewed as

Mother's death (the taxable event) or as Stepfather's tortious conduct giving rise to Mother's chose in action, the transaction is undeniably separate from the event giving rise to the Appellants' refund claim, i.e., the death of Stepfather and the concededly erroneous taxation of his estate.

While creation and taxation of the Trust was in some ways related to these various transactions, any "factual and arithmetic" link between them is insufficient to enable the Government to succeed in its claim for recoupment. *Harrah,* 77 F.3d at 1127. Further analysis of the Trust will reveal why the liability of Mother's estate and the overpayment with respect to Stepfather's estate cannot be viewed as taxation of a single transaction on inconsistent legal theories. The corpus of the Trust consisted of $325,-000. Stepfather did not give this sum to Appellants. Instead, Stepfather made himself the income beneficiary of the corpus for life. Appellants merely received a remainder interest in $325,000. It was this remainder, not $325,000, that was includable in Mother's estate when the Trust was created. While the Government's failure to assert a deficiency against Mother's estate based upon the value of the remainder, and inclusion of the corpus in Stepfather's estate were both wrong, the erroneous tax treatment of the separate estates was not due to inconsistent legal positions taken by Appellants. It is beyond doubt that the executor of Mother's estate never even considered Mother's claim against Stepfather, much less whether such a claim should be included in Mother's estate. To explain why this is so, we need only point out that the executor of Mother's estate was none other than Stepfather himself. Moreover, while creation of the Trust in settlement of the claim against Stepfather may have reduced the claim to a sum certain (for the litigants' purposes), the settlement had no effect upon the tax liability of Mother's estate. There is no suggestion that the Government was bound by the settlement between Stepfather and Appellants. If the Government chose to assert the deficiency against Mother's estate, it was free to prove the actual value of Mother's claim. Accordingly, the failure to tax either Mother's claim against Stepfather or the remainder interest

in the Trust as part of Mother's estate had no bearing on the includability of the corpus of the trust in Stepfather's estate.

To see further why there is no inconsistency involved in this case, compare the circumstances in which a single error or inconsistent tax treatment enabled a party to successfully assert an equitable recoupment defense. In *Bull,* 295 U.S. at 251–53, 55 S.Ct. at 696–97, partnership profits were includable either in the decedent's gross estate (as initially asserted by the Commissioner) or as income to the estate (as later claimed by the Commissioner), but not both. In *Stone,* 301 U.S. at 533–34, 57 S.Ct. at 852, trust income was taxable either to the beneficiary or to the trustees, but not both, and the inconsistent tax treatment of the trust income (i.e., double taxation) was brought about by an intervening change in applicable law. In *Kolom,* 791 F.2d at 763–64, the tax due from a sale of stock options was payable either in 1972 (as later claimed by the Commissioner) or in 1973 (as initially claimed by the taxpayer and accepted by the Commissioner), but not both. Here, there has been no inconsistent tax treatment of or inconsistent legal positions taken with respect to Mother's and Stepfather's estates. There was simply an erroneous inclusion in Stepfather's estate and an erroneous failure to assess the full value of Mother's gross estate.

In regard to the failure to fully tax Mother's estate, by the time that the Trust was created in 1975, the general three-year statute of limitations on assessment of estate taxes already had run. I.R.C. § 6501(a). But assuming Appellants' allegations were true, i.e., that Stepfather had fraudulently converted approximately $1 million of Mother's property, the Government would have had an additional three years to assess the resulting deficiency in Mother's estate. I.R.C. § 6501(e)(2). Upon learning of such allegations, however, the Government did nothing. That Appellants did not prove the Government's deficiency claim for them (which the Appellants were apparently more than willing to do), is no excuse. Instead, the Government finally roused to action a decade later when Appellants sought a re-

fund to which they were rightfully entitled. The availability of an equitable remedy, however, should not be treated as an invitation to conduct "a search of the taxpayer's entire tax history for items to recoup." *Rothensies,* 329 U.S. at 302, 67 S.Ct. at 274. Here, the Government's search was in vain.

To conclude, we are dealing here with two or more taxpayers, two or more transactions, no inconsistent treatment between them, and no equitable reason to deny Appellants their refund. If Mother's estate was not taxed to the extent that it should have been, so be it. If Appellants benefitted as a result, they did not do so unjustly. In the final analysis, the Government concedes that the corpus of the Trust was erroneously included in Stepfather's gross estate. Because the Government may not use the defense of equitable recoupment to retain the taxes paid as a result of the inclusion of the Trust, Appellants are entitled to a full refund. Because our decision regarding equitable recoupment is dispositive, we need not address Appellants' estoppel argument. The matter is remanded to the district court to enter summary judgment in favor of Appellants. The decision of the district court denying Appellants' claim for refund is **REVERSED.**