Aaron L. KOLOM and Serita Kolom,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 85–5970.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1986.

Decided June 10, 1986.

As Amended on Denial of Rehearing
Aug. 15, 1986.

S. Zackary Samuels, Dolman, Wolfe & Linden, Los Angeles, Cal., for plaintiffs-appellees.

Gary R. Allen, Steven I. Frahm, Dept. of Justice, Washington, D.C., for defendant-appellant.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Serita Kolom is a party solely because she and Aaron L. Kolom filed a joint federal income tax return in 1972.

2. For a more detailed description of the stock option plan and its compliance with sections 421 and 422, *see Kolom v. C.I.R.,* 644 F.2d 1282, 1283-84 (9th Cir.), *cert. denied,* 454 U.S. 1011, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981) (*Kolom I*).

3. Section 56. Imposition of Tax.
   (a) In General—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 percent of the amount (if any) by which—

Before PREGERSON and BEEZER, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Aaron L. and Serita[1] Kolom seek a refund for double payment of the federal minimum tax assessed upon their exercise of company stock options, an item of tax preference. The Internal Revenue Service (IRS) contends that the statute of limitations bars Kolom's claim for refund. The district court found that the claim was timely filed, based on the mitigation provisions of Sections 1311-1314 of the Internal Revenue Code of 1954 (IRC or Code), enacted to relieve the harsh effect of statutes of limitations in specified circumstances. The district court accordingly entered a summary judgment in favor of Kolom. This court modifies and affirms the district court judgment.

## I. *Background*

Kolom was an officer and director of Tool Research and Engineering Corporation (Tool Research). During the taxable year 1972, Kolom exercised certain stock options he had received that year pursuant to an employee stock option plan sponsored by Tool Research. The stock option plan qualified for favorable tax treatment. The Code exempted from gross income the stock options' "bargain element"—the difference between the stock's fair market value and its option price. IRC §§ 421-22, 26 U.S.C. §§ 421-22.[2] Instead, the Code included the bargain element as an item of "tax preference" subject only to a "minimum tax." IRC §§ 56, 57.[3]

(1) the sum of the items of tax preference in excess of $30,000, is greater than
(2) the sum of—
(A) the taxes imposed by this chapter for the taxable year ... reduced by the sum of the credits allowable ... [and]
(B) the tax carryovers to the taxable year.
Section 57. Items of Tax Preference.
(a) In General—For purposes of this part, the items of tax preference are—
. . . . .
(6) Stock Options—With respect to the transfer of a share of stock pursuant to the exercise of a qualified stock option (as defined in section 422(b)) or a restricted stock option (as defined in section 424(b)), the amount by which the fair market value of the share at the time of exercise exceeds the option price.

Kolom did not include the stock options' bargain element as an item of tax preference in 1972 because the stock was subject to a substantial resale restriction imposed by § 16(b) of the Securities Exchange Act of 1934 (the Act). Section 16(b) required return to the company of any profits made on the sale of such stock within six months of the time the option was exercised. Kolom noted on his 1972 income tax return that he would defer reporting of the bargain element as a tax preference item until he could sell the stock and retain the profits.[4] Kolom included the stock options as a tax preference item in his 1973 income tax return. Calculating the fair market value of the shares six months after the options were exercised, Kolom paid a minimum tax of $8,097 for 1973.

The IRS twice reviewed Kolom's 1972 return. In January, 1975, the IRS District Director wrote Kolom that the revenue agent's report had been reviewed and accepted. In January, 1976, however, the IRS decided that Kolom should have paid the minimum tax in 1972, not 1973.

Kolom challenged the assessment of the minimum tax for 1972. He argued that the

4. In his 1972 tax return, statement 9-Form 4625 Footnotes, Kolom explained:

> During 1972 taxpayer exercised his option to purchase Tool Research Co. stock. The taxpayer is not treating this as preference income for the following reason:
>
> Income Tax Regulation 1.57–1(f)5(i) states that there is no tax preference if the stock is disposed of in the year the option is exercised. By law, the taxpayer could not sell the stock in the year the option was exercised because all of his profit would belong to the corporation. The stock is being sold the year in which the taxpayer is first able to sell the stock. Because of the above reason and because the nature of the tax consequences are the same whether the taxpayer sold the stock in the year the option was exercised or the succeeding year, the item is not being treated as a tax preference item in 1972.

See Kolom I, 644 F.2d at 1284.

5. Kolom I held that despite the restriction imposed on the sale of Kolom's stock by § 16(b) of the Act, Kolom owed a minimum tax on the options' bargain element in the year of exercise, 1972. Although the Supreme Court denied certiorari, Justice Powell's dissent highlighted the inequities of the Kolom I holding. As a result, Congress passed an amendment excepting the options' bargain element from minimum tax

substantial restriction imposed by § 16(b) of the Act prohibited assessment of the tax until 1973. The Tax Court ruled in favor of the IRS. Kolom v. Commissioner, 71 T.C. 235 (1978). This court affirmed in Kolom I, 644 F.2d 1282.[5]

Kolom wrote the Commissioner of the IRS on February 11, 1982. Citing Kolom I, he requested a notice of assessment of the minimum tax due for 1972. In his letter Kolom stated, "We trust that this payment and interest [the minimum tax paid in 1973] will be subtracted from the amount due." During oral argument, counsel for the Government acknowledged that the IRS had received the letter and was aware of Kolom's request for a refund. The IRS, however, did not assess the tax due until May of 1983, one year and three months after the Supreme Court denied certiorari.[6] Kolom paid the full amount of the minimum tax, $43,792, plus interest, assessed for 1972, for a total of $86,485.49.[7] Two months later, on July 1, 1983, Kolom filed a formal claim for refund of the minimum tax paid in 1973.

until after the lapse of the six month sale restriction of § 16(b) of the Act. IRC § 83(c)(3). This is the exact treatment Kolom accorded the exercise of his 1972 stock options. However, the amendment only applied to transfers made after December 31, 1981. Courts, addressing issues similar to those presented in Kolom I, now rule in favor of the taxpayer. See generally McDonald v. CIR, 764 F.2d 322 (5th Cir.1985) (holding Treas.Reg. § 1.57–1(f) inapplicable to lapse restriction imposed on qualified stock options); Estate of Gresham v. CIR, 752 F.2d 518 (10th Cir.1985).

6. Kolom speculates that the IRS delayed its assessment because it was unsure whether Congress would retroactively apply IRC § 83(c)(3) to the year 1972. Kolom further urges that IRC § 1314(b) required the IRS to assess the tax within one year from the date of the determination. The IRS, however, did not invoke the mitigation provisions in order to assess the tax. Rather, the IRS properly reopened Kolom's 1972 and 1973 returns. Kolom I, 644 F.2d at 1289–90. The IRS was not subject to the one year assessment period required by § 1314(b). Accord IRC § 6501(a) (provides general limitation period for assessment).

7. The fair market value of the stock was substantially higher in 1972 than in 1973, thus accounting for the increased minimum tax assessment in 1972—$43,792 as opposed to $8,097.

The IRS did not refund the tax. Kolom filed this action for refund on June 5, 1984. The IRS admitted all allegations of the complaint, and moved to dismiss Kolom's complaint for lack of jurisdiction because Kolom had not filed an administrative claim for refund within the statutorily prescribed period. Kolom filed a motion for summary judgment. The district court held that the mitigation provisions, IRC §§ 1311–1314, lifted the bar of the statute of limitations and granted summary judgment in favor of Kolom. The court found Kolom entitled to a refund of $8,097.

## II. *Contentions on Appeal*

The Government contends that the district court erred in deciding that the mitigation provisions apply in the circumstances of this case, and that, even if they do otherwise apply, the taxpayers failed to file their refund claim within the extended period that would then be applicable. We also consider, alternatively, whether the doctrine of equitable recoupment supports recovery of the twice paid tax.

## III. *The Mitigation Provisions*

Section 6511(a) of the Code provides that, ordinarily, a claim for refund of an overpayment of tax must be filed within three years of the date a taxpayer's return was filed or two years from the date the tax was paid, whichever is later. Section 6511(a) accordingly barred any claim for tax refund filed after April 15, 1977, unless the mitigation provisions lifted the time bar of this section.

The mitigation provisions extend the period of limitations to file a timely claim for refund for one year from the date a final determination is made. IRC § 1314(b). Congress intended the mitigation provisions to

"provid[e] for mitigation of *some* of the inequities under the Income Tax Laws caused by the Statute of Limitations and other provisions which now prevent equitable adjustment of various income hardships," H.R.Rep. No. 2330, 75th Cong., 3d Sess. 56 (1938)....

*O'Brien v. United States*, 766 F.2d 1038, 1042 (7th Cir.1985) (emphasis added). This court has narrowly construed the requirements of the mitigation provisions. *See*

*United States v. Rigdon*, 323 F.2d 446, 449 (9th Cir.1963); *United States v. Rushlight*, 291 F.2d 508, 514 (9th Cir.1961) (interpreting predecessor statute, IRC § 3801 (1939)).

The mitigation provisions require that (1) a final "determination" be made, IRC § 1313(a); (2) the error fall within one of the specified circumstances of adjustment, IRC § 1312; and (3) the determination be inconsistent with that made in another year, IRC § 1311(b). *See Rigdon*, 323 F.2d at 448; *Rushlight*, 291 F.2d at 515; *O'Brien*, 766 F.2d at 1042. We agree with the IRS that a final determination in this case was made when the Supreme Court denied certiorari in *Kolom I* on November 2, 1981, and that this determination is inconsistent with the taxpayers' reporting of tax preference in connection with the exercise of the options in 1973.

The Government's principal contention is that the mitigation provisions do not apply because the double payment of the minimum tax does not fit within one of the specified circumstances of adjustment listed in IRC § 1312, specifically § 1312(1). Section 1312(1) provides for application of the mitigation provisions if "[t]he determination requires the inclusion in *gross income* of an item which was erroneously included in the *gross income* of the taxpayer for another taxable year...." (Emphasis added). Kolom contends that since the minimum tax is an income tax it falls within § 1312(1). The IRS urges that "gross income" is a term of art and must be construed consistently throughout the Code.[8]

The Code specifically defines gross income. IRC § 61. The Tenth Circuit in *Gardiner v. United States*, construing the mitigation provisions, adhered to this definition of gross income, and stated that "[t]he meaning of an *item* of gross income is, under Section 61 ..., limited to specific items and does not include everything that results in an increase in tax." 536 F.2d 903, 906 (10th Cir.1976) (emphasis in original).

The Code exempts the stock options' bargain element from inclusion in gross income. IRC § 421(a)(1). *See also Kolom I*, 644 F.2d at 1285. The Code, however, does

---

8. Kolom argues that the IRS has conveniently changed its position from that in *Kolom I*. In *Kolom I* the IRS argued that the bargain element constituted economic income, not gross income. The IRS has not changed its argument in the instant case.

include the bargain element in the sum of tax preference items, IRC § 57(a)(6), subject to a separate minimum tax, IRC § 56. *See supra* note 3. Courts have held the minimum tax taxes income; but it taxes economic income only, not gross income. *Wyly v. United States,* 662 F.2d 397, 405 (5th Cir.1981) (citing H.R.Rep. 91–413, Pt. 1, 91st Cong., 1st Sess. 78 (1969–3 C.B. 200, 249), [1969] U.S.Code Cong. & Ad.News 1645, 1725). *Accord Kolom I,* 644 F.2d at 1287 (stock options confer economic benefit). Items of tax preference are not included in gross income. The Treasury Regulations clarify:

> The items of tax preference [subject to minimum tax] represent income of a person which either is not subject to current taxation by reason of temporary exclusion (such as stock options) or by reason of an acceleration of deductions ... or is sheltered from full taxation by reason of certain deductions ... or by reason of a special tax.... The tax imposed by section 56 is in addition to the other taxes imposed by chapter 1.

Treas.Reg. § 1.56–1(b).

Kolom relies on *Karpe v. United States,* 335 F.2d 454, 167 Ct.Cl. 280 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965), and *Gooch Milling and Elevator Co. v. United States,* 78 F.Supp. 94, 111 Ct.Cl. 576 (1948). In *Karpe,* the court held that because a divorce property settlement directly increased/decreased the taxpayer's gross income, the determination affected an *item* of gross income. 335 F.2d at 460. In *Gooch,* the court similarly held that because inventory valuation directly increased/decreased the taxpayer's gross income, the determination affected

an *item* of gross income. 78 F.Supp. at 100. In neither *Karpe* nor *Gooch* was the "item" reflected as a separate entry in the taxpayer's return.

■ Unlike *Karpe* or *Gooch,* the stock options' bargain element does not affect gross income. Because the Code excludes the bargain element from gross income, the bargain element does not even indirectly affect gross income. Neither do items of tax preference indirectly affect gross income.[9] The stock options' bargain element, thus, is not an item included in gross income under § 1312(1). The mitigation provisions do not afford Kolom relief from the statute of limitations.

### IV. The Doctrine of Equitable Recoupment

■ The United States Supreme Court defined and refined the doctrine of equitable recoupment in a series of three cases: *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); and *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). The doctrine is grounded in equity. *Stone,* 301 U.S. at 534–35, 57 S.Ct. at 852–53. It, like the mitigation provisions, relieves the harsh consequences resulting from application of the statute of limitations. The doctrine, however, is not limited to certain circumstances of adjustment.

■ The doctrine of equitable recoupment[10] prevents unjust enrichment—it is

---

9. At most, gross income indirectly affects the minimum tax assessed. The minimum tax calculation includes a subtraction of "taxes imposed for such year under Chapter 1 other than [certain enumerated taxes and credits]." Treas. Reg. § 1.56–1(b)(2). Gross income less deductions generally determines taxable income subject to tax under Chapter 1. Although gross income indirectly affects the minimum tax, the minimum tax does not affect gross income as required.

10. On appeal Kolom does not specifically refer to the doctrine of equitable recoupment. He does, however, urge that equity requires relief. The doctrine of equitable recoupment is the method used by courts to afford equitable relief from the harsh effects of the Code's statute of

limitations. Kolom also made an equitable argument before the district court. Although the district court did not specifically consider the doctrine of equitable recoupment, the doctrine is now considered based on the narrow exception that a reviewing court will consider such a question of law to prevent an injustice. *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983) (an exception is made where plain error occurs and injustice might otherwise result), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The doctrine of equitable recoupment essentially requires the same criteria necessary to prove application of the mitigation provisions, the mitigation provisions requiring proof of even further criteria.

invoked either by the taxpayer to recover a twice paid tax or by the Government to prohibit tax avoidance. It works as a set-off. The Court has explained:

> The essence of the doctrine of recoupment is stated in the *Bull* case: "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." 295 U.S. 247, 262 [55 S.Ct. 695, 700]. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Rothensies*, 329 U.S. at 299, 67 S.Ct. at 272.

Viewing the transaction in this case as a whole, we are persuaded that the circumstances surrounding Kolom's sale of the stock options justify application of the doctrine of equitable recoupment. Kolom clearly identified his treatment of the stock options in his 1972 and 1973 tax returns. *Cf. United States v. Bowcut*, 287 F.2d 654 (9th Cir.1961) (taxpayer possessed "clean" hands). The IRS did not notice the inappropriate treatment until almost three years after Kolom had initially filed his return.[11] Immediately following the final decision in *Kolom I*, Kolom wrote the IRS requesting the 1973 tax to be applied to the amount assessed for 1972. The IRS was then on notice of all elements of Kolom's refund claim. By operation of the statute of limitations and further inapplicability of the mitigation provisions, Kolom was precluded from successfully filing and receiving his claim for refund of the twice paid tax. By retaining the twice paid tax, the

Government was unjustly enriched. The doctrine of equitable recoupment relieves these inequities.

The doctrine of equitable recoupment applies if "a single transaction constitute[s] the taxable event claimed upon and the one considered in recoupment." *Rothensies*, 329 U.S. at 299, 67 S.Ct. at 272; *Los Angeles Shipbuilding & Drydock Corp. v. United States*, 289 F.2d 222, 232–33 (9th Cir.1961). The single transaction must also be subjected to two taxes based on inconsistent legal theories. *Rothensies*, 329 U.S. at 300, 67 S.Ct. at 272. Finally, the amount claimed in recoupment must be barred by the statute of limitations, while the asserted deficiency by the government must be timely. *Stone*, 301 U.S. at 538, 57 S.Ct. at 854; *O'Brien*, 766 F.2d at 1049; *Wells Fargo Bank and Union Trust Co. v. United States*, 245 F.2d 524, 535–36 (9th Cir.1957).

In both *Bull* and *Stone*, each of these three criteria was met. Later cases, however, have declined to apply the doctrine of equitable recoupment when lacking any one of the criteria. The Court narrowly limits the doctrine's application to avoid seriously undermining the statute of limitations. *Rothensies*, 329 U.S. at 302, 67 S.Ct. at 273; *Wells Fargo*, 245 F.2d at 535. The double taxation of Kolom's sale of the stock options clearly meets each of the three criteria.

In its petition for rehearing the Government correctly notes that the issues with respect to the doctrine of equitable recoupment were not considered in the initial briefs. The Government contends that in applying the doctrine to this case, the court

---

**11.** In *Bowcut*, this court noted that some delay in asserting a right to a refund would not preclude a refund based on equitable recoupment. 287 F.2d at 657. *Cf. Wilmington Trust Co. v. United States*, 610 F.2d 703, 714 (Ct.Cl.1979) ("One factor that may affect [the ability to avoid the limitation bar] is whether the litigant ... had a fair opportunity to bring suit to recover the tax before the statute ran."). Kolom did not delay. The IRS did not discover Kolom's clearly noted treatment of the stock options until 1976. Kolom's minimum tax liability for 1972 was not finally determined until 1981. Thus, Kolom was effectively precluded from asserting a timely claim for refund. Although Kolom had until April 15, 1977 to file a timely claim for refund under IRC § 6511(a), to require him to do so would have placed him in the difficult position of requesting refund of a tax he asserted was correctly paid. Shortly after the Supreme Court denied certiorari, Kolom wrote the IRS and requested the monies paid in 1973 be applied to his 1972 liability.

goes beyond the limited application of *Bull* and *Stone*. Specifically, it is argued: "[E]quitable recoupment constitutes only a *defense* to liability sought to be established in a timely action involving the transaction in question. It does not permit an *independent* action either by the Government to collect additional taxes, or by the taxpayer to claim a refund of an overpayment for a year in which the statute of limitations has run." The Government misinterprets the circumstances of *Bull* and the consequent scope of the doctrine of equitable recoupment.

The circumstances of *Kolom* are similar to those in *Bull*. As in *Kolom*, the taxpayer in *Bull* had already twice paid tax on the profits accruing from his business, and in a separate action, the taxpayer sued the Government for a refund of the twice paid tax. *Bull*, 295 U.S. at 253, 258, 55 S.Ct. at 697, 699. The Court of Claims had held the action barred by the statute of limitations. In reversing, the Supreme Court noted that while "the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights." *Id.* at 261, 55 S.Ct. at 700. Recognizing that recoupment is in the nature of a defense, and must arise out of the same transaction, the Court concluded:

> The circumstance that both claims, the one for estate tax and the other for income tax, were prosecuted to judgment and execution in summary form does not obscure the fact that in substance the proceedings were actions to collect debts alleged to be due the United States. *It is immaterial that in the second case, owing to the summary nature of the remedy, the taxpayer was required to pay the tax and afterwards seek refundment.* This procedural requirement does not obliterate his substantial right to rely on his cross-demand for credit of the amount which if the United States had sued him for income tax he could have

recouped against his liability on that score.

*Id.* at 262–63, 55 S.Ct. at 700–01 (emphasis added).

The Government relies heavily on the Seventh Circuit's decision in *O'Brien*, 766 F.2d at 1048–51. We find *O'Brien* distinguishable from this case. In *O'Brien*, the district court, relying on *Bull*, had held for the taxpayer under the doctrine of equitable recoupment. In reversing, the court of appeals recognized that for the doctrine to be applicable there must be a "single transaction" and a "single taxpayer". The taxpayer in *O'Brien* did not meet these requirements. The tax collected by the Government resulted from a separate transaction by a different taxpayer (estate and subsequent seller of property).[12] However, in concluding that the taxpayer could not invoke the doctrine of equitable recoupment, the court in *O'Brien* expressly recognized that:

> A recoupment claim need not be made during an action by the government for payment of a deficiency. It is proper for the taxpayer to pay the entire amount of the properly owed tax and later make a timely refund claim with regard to the properly owed tax raising the defense of equitable recoupment in respect of another time-barred overpayment. See, *e.g.*, *Bull*, 295 U.S. at 253, 262–63, 55 S.Ct. at 697, 700–01.

766 F.2d at 1049, n.13.

The circumstances here are more analogous to those in *Bull* than to the circumstances in *O'Brien*. This case arises from a "single transaction" and involves a "single taxpayer".

██ As discussed above, the statute of limitations barred Kolom's claim for refund of the tax paid in 1973, and the mitigation provisions did not lift the time bar. Yet the Government timely asserted a deficien-

---

12. In *O'Brien* two events occurred. Property for estate tax purposes was undervalued, and the IRS asserted a deficiency for the undervaluation. In the meantime the property was sold, and gain reported based on the undervaluation. Had the correct value been used to report the gain, taxpayer would have paid less tax. After the IRS changed the value of the property in the estate, the first transaction, taxpayers tried to claim refund of the tax paid as gain on the sale of the property, the second transaction.

cy for the year 1972. *See Kolom I,* 644 F.2d at 1289–90. The IRS concedes that the two taxes were based on inconsistent legal theories. It is clear that a single transaction, the sale of the stock options, gave rise to both the tax paid by Kolom in 1973 and the deficiency assessed by the IRS for 1972. Accordingly, the doctrine of equitable recoupment applies and entitles Kolom to a refund of the minimum tax on the sale of the stock options paid in 1973.

### V. *Conclusion*

We conclude that (1) the mitigation provisions do not apply to relieve the time bar because Kolom's sale of the stock options did not affect gross income as required by IRC § 1312(1); and (2) under the doctrine of equitable recoupment Kolom is entitled to a refund for the tax paid in 1973. The district court judgment is accordingly modified and affirmed.