T.C. Memo. 2016-33

UNITED STATES TAX COURT

SALLY M. COSTELLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRIAN L. COSTELLO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29341-08, 29380-08.　　　Filed March 1, 2016.

<u>Patrick J. Quinn</u> and <u>Philip J. Terry</u>, for petitioners.

<u>Timothy A. Froehle</u>, <u>Jon D. Feldhammer</u>, <u>Elizabeth K. Wickstrom</u>, and <u>Bryant W.H. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies for 2001 as follows:

[*2]

| Petitioner | Deficiency |
| --- | --- |
| Sally M. Costello | $14,359 |
| Brian L. Costello | 27,105 |

The issues for decision are whether respondent, through the mitigation provisions, can avoid the period of limitations barring assessment against petitioners for 2001 and, if so, whether individual retirement account (IRA) distributions made in 2001 to the trust of petitioners' father should be deemed distributions for other tax years. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time their petitions were filed, petitioners resided in California.

Petitioners, along with their brothers James Barry Costello and John Bruce Costello, are the adult children of James V. Costello (petitioners' father). On April 1, 1993, petitioners' father, unmarried at the time, created the James V. Costello 1993 Trust (JVC Trust), a living trust under California law that would, upon his death, distribute his estate in equal shares to his four children as beneficiaries. The JVC Trust instrument designated Sally M. Costello (petitioner)

[*3] and James Barry Costello to act as its cotrustees after the death of petitioners' father, who would serve as the initial trustee. Their duties, as successor trustees, would be to hold, administer, and distribute the trust estate.

Petitioners' father had several IRAs managed by Transamerica Financial Resources, Inc. (Transamerica Funds). The IRAs had various beneficiaries; some IRAs named JVC Trust and/or its trustees as the beneficiaries, while others named JVC Trust and some of the children, including petitioner, as beneficiaries. On April 13, 1993, 12 days after JVC Trust's creation, petitioners' father wrote Transamerica Funds, asking it to change the beneficiaries of specified IRAs solely to the trustee of JVC Trust and to "reregister" specified IRAs in the name of JVC Trust's trustee or successor trustee. After 1993, John Hancock Funds, an investment management company of John Hancock Life Insurance Co., apparently purchased Transamerica Funds and assumed the IRAs as their custodian.

Petitioners' father died on or before June 21, 1998, causing petitioner and James Barry Costello to become the cotrustees of JVC Trust. A financial adviser of petitioners' father sent a letter dated September 10, 1998, to John Hancock Funds, requesting that the IRAs reflect JVC Trust as the sole beneficiary. The letter explained that petitioners' father had previously sent instructions to Transamerica Funds to this effect in 1993 but that apparently the records were

[*4] incomplete or incorrect when John Hancock Funds bought Transamerica Funds, because the beneficiary designations had not been changed. In response to a requirement of John Hancock Funds, the letter included statements by the children named as beneficiaries, including petitioner, declaring that they waived their interests in the applicable IRAs. Petitioner, acting in accordance with her father's instructions for these IRAs, sent her statement for the purpose of correcting the beneficiary designation mistakes.

In another letter to John Hancock Funds, sent on or around October 26, 1998, petitioner requested that the registration of other IRAs, not addressed in the letter dated September 10, 1998, be changed to the cotrustees of JVC Trust. In a separate enclosure, petitioners' father's financial adviser emphasized that "[t]hese are only reregistrations not distributions."

In 2001, John Hancock Funds made distributions totaling $228,530.44 (JH distributions) to JVC Trust through its cotrustees. From those JH distributions JVC Trust made two distributions of $114,265 to each of the petitioners in 2001.

JVC Trust timely filed Form 1041, U.S. Income Tax Return for Estates and Trusts, for its 2001 tax year. It reported the JH distributions as income of $228,530 and also reported a related income distribution deduction of $228,699 that essentially caused it to have negative taxable income and no tax due. It also

[*5] reported on Schedules K-1, Beneficiary's Share of Income Deductions, Credits, etc., that petitioners each received income of $114,265 in 2001.

Petitioners each timely filed a 2001 Form 1040, U.S. Individual Income Tax Return. On their respective returns, petitioners each reported trust income of $114,265 from JVC Trust.

In 2004, the Internal Revenue Service (IRS) selected JVC Trust's 2001 tax return for examination. Petitioner cooperated with the examination and, as a trustee, signed Form 872, Consent to Extend the Time to Assess Tax, thereby extending the expiration date for assessment for JVC Trust's 2001 tax year to April 15, 2006. The IRS examining agent subsequently determined that the JH distributions were taxable at the trust level; thus he disallowed the related income distribution deduction and determined a deficiency of $80,302 for JVC Trust.

On November 9, 2004, the examining agent executed Form 4549, Income Tax Examination Changes, memorializing these changes. With respect to the 2001 tax liability of JVC Trust, petitioner submitted Form 56, Notice Concerning Fiduciary Relationship, wherein she identified herself as a fiduciary of JVC Trust. On January 21, 2005, petitioner, as a trustee, signed the Form 4549, thus agreeing with the determination and waiving JVC Trust's right to appeal the determination.

**[*6]**   Around the same time in November 2004, the examining agent correspondingly adjusted each of petitioners' 2001 returns by, inter alia, subtracting the JVC Trust distributions from their gross incomes.  These adjustments resulted in tax abatements of $14,359 for petitioner and $27,105 for Brian L. Costello.  In January 2005, petitioners signed Forms 4549 with respect to these changes to their 2001 returns.

On January 21, 2005, petitioner sent a check for $38,838 to the IRS as payment towards JVC Trust's 2001 tax liability.  Petitioner wrote that check from her personal account.  The IRS, on March 21, 2005, issued to petitioners refunds on the bases of their 2001 tax abatements plus interest.  Petitioners subsequently paid to the IRS the full amounts of these refunds to pay the balance of JVC Trust's liability.

On or around November 13, 2006, petitioner, as a trustee, executed an amended Form 1041 on behalf of JVC Trust, claiming a refund for its 2001 tax year.  The amended return was prepared by Attorney Patrick J. Quinn and reversed the determinations made during the IRS examination by once again claiming the income distribution deduction related to the JH distributions.  By letter dated August 8, 2008, the IRS made a determination to accept JVC Trust's refund claim of $80,302.

**[*7]**    The IRS sent to each of the petitioners a notice of deficiency, dated September 2, 2008, with respect to her or his 2001 tax year.  The notices explained, inter alia, that petitioners' gross incomes had been adjusted to once again include the $114,265 JVC Trust distributions.

On August 11, 2009, the IRS issued a refund check (including interest) for $123,815.57 to JVC Trust.  Petitioner, as a trustee, endorsed and deposited the check on November 12, 2009.

OPINION

The main issue is whether the mitigation provisions of sections 1311 through 1314 permit respondent's adjustments of petitioners' 2001 tax returns in 2008, more than six years after the returns were filed.  The general period of limitations for the IRS to assess tax is three years from the date of the filing of a return.  See sec. 6501(a).  While there are potential extensions and exceptions to this period, none appears to apply here.  Thus, respondent did not issue the 2001 notices of deficiency (dated September 2, 2008) within the period of limitations (expired on April 15, 2005, see infra p. 12), and this failure acts as a bar to any assessment of tax for 2001 unless the mitigation provisions apply.

The mitigation provisions allow for the correction of an error made in a closed tax year by extending the limitations period up to one year from the date a

[*8] final determination is made.  Secs. 1311, 1314(b); see Beaudry Motor Co. v. United States, 98 F.3d 1167, 1168 (9th Cir. 1996).  Their intent is to take "the profit out of inconsistency, whether exhibited by taxpayers or revenue officials, and whether fortuitous or the result of design", and their purpose is to prevent the Government or a taxpayer from obtaining "an unfair benefit * * * by assuming an inconsistent position and then taking shelter behind the protective barrier of the * * * [period] of limitations."  S. Rept. No. 75-1567, at 49 (1938), 1939-1 C.B. (Part 2) 779, 815.  These technical provisions, covering only specific instances of inconsistent treatment, are not intended to grant the Court broad equitable powers. Bolten v. Commissioner, 95 T.C. 397, 403 (1990); accord Kolom v. United States, 791 F.2d 762, 765 (9th Cir. 1986) (construing narrowly the requirements of the mitigation provisions), abrogated on other grounds by United States v. Dalm, 494 U.S. 596 (1990).  On the other hand the provisions should not be construed so strictly as to defeat their intended purpose.  Bolten v. Commissioner, 95 T.C. at 403.

The following requirements must be met for relief under the mitigation provisions:  (1) there must have been a "determination" as defined in section 1313(a); (2) that determination caused one of the errors described in section 1312; and (3) on the date of that determination, any adjustment to correct the error is

[*9] barred by operation of law (other than a section 7122 compromise or these mitigation provisions). Sec. 1311(a); see Beaudry Motor Co., 98 F.3d at 1168. Respondent, as the party asserting mitigation, has the burden of showing its applicability. See Bradford v. Commissioner, 34 T.C. 1051, 1054 (1960); see also United States v. Rushlight, 291 F.2d 508, 514 (9th Cir. 1961) (addressing predecessor section 3801 of the 1939 Internal Revenue Code).

Respondent argues that because JVC Trust did not have to pay tax on the JH distributions on account of its successful claim for refund and because petitioners also received individual refunds that resulted, in effect, from those same distribution items for the same tax year, there has been an inconsistent tax treatment of those items that resulted in an error that cannot be corrected without applying the mitigation provisions. Respondent therefore asserts that the above requirements have been met, offering this frame of reference: (1) JVC Trust, through petitioner as a trustee, filed a claim for refund for which the IRS made a determination on August 8, 2008, that allowed the refund; (2) because that IRS determination accepted the income distribution deduction for JVC Trust (thereby eliminating the JH distributions as taxable income at the trust level), the correlating inclusion of the JVC Trust distributions (as taxable income at the beneficiary level) had been erroneously excluded by petitioners who had accepted

**[\*10]** refunds; and (3) as of August 8, 2008, petitioners' 2001 returns, as modified by respondent's examination, could not be adjusted by operation of law because the three-year period of limitations for assessment had expired.

Petitioners do not deny that they received a windfall as a consequence of the IRS' earlier examination determinations that permitted their 2001 refunds coupled with the IRS' later determination that allowed JVC Trust a 2001 refund based upon the same distribution items of income. They instead argue that the JVC Trust refund is a "respondent created" asset to which the mitigation provisions do not apply and that respondent is attempting to restore all parties to their positions as originally filed.

It appears that petitioners are advocating that where the Government caused an error to come about, then the mitigation provisions should not be made available to it. However, these provisions equally apply to whoever made the mistake, and the IRS is entitled to correction of an error, if merited. See, e.g., Chertkof v. Commissioner, 66 T.C. 496, 503 (1976) ("The Government's 'fault' in taking its first view--at least if it was done in good faith--was not to prevent it from collecting the revenue or to absolve the taxpayer from all tax on the item."), aff'd, 649 F.2d 264 (4th Cir. 1981); see also Yagoda v. Commissioner, 331 F.2d 485, 490 (2d Cir. 1964) ("[T]he nature of the mitigation of limitations provisions

**[*11]** * * * [is] remedial, not punitive."), aff'g 39 T.C. 170, 180 (1962).  We therefore look to the merits of respondent's argument.

Section 1313(a)(3) provides that a "determination" includes a final disposition of a claim for refund.  Such a determination is deemed a final disposition on the date that the refund is allowed.  See id.; see also sec. 6407 ("The date on which the Secretary first authorizes the scheduling of an overassessment * * * shall be considered as the date of allowance of refund".).  The IRS' determination of JVC Trust's claim for refund (IRS determination) thus became a final disposition on August 8, 2008, and is a determination for purposes of section 1313(a).

As to whether the IRS determination caused a pertinent error, section 1312 enumerates the seven applicable errors (described as circumstances of adjustment), including one which concerns correlative deductions and inclusions for trusts and beneficiaries.  See sec. 1312(5).  A circumstance requiring adjustment of an error exists where a determination allows an additional deduction to a trust while the correlative inclusion has been erroneously excluded by the related beneficiary.  Id.; see also Evans Tr. v. United States, 462 F.2d 521, 525 (Ct. Cl. 1972) (citing section 1.1312-5, Income Tax Regs., for the proposition that section 1312(5) is meant to apply only to errors growing out of distributions by a trust or estate to

[*12] beneficiaries, heirs, or legatees). By permitting the income distribution deduction, the IRS determination created a conflicting error: distribution income, which had already been excluded from petitioners' postexamination 2001 returns, was no longer taxable with respect to JVC Trust's amended 2001 return. Thus the IRS determination caused the error described in section 1312(5). (But see infra p. 18 regarding petitioners' theory that no trust existed after 2003.)

In consideration of whether there was any ability to adjust the error, petitioners' 2001 tax years were already closed as of August 8, 2008, the date of the IRS determination. For purposes of the period of limitations, petitioners' 2001 individual tax returns were deemed filed as of April 15, 2002. See sec. 6501(b)(1). As no extensions were filed by petitioners with respect to their own returns, and no exception applies, the period of limitations for assessment of their 2001 tax liabilities expired on April 15, 2005. See sec. 6501(a). Respondent was therefore statutorily barred from making any adjustment to correct the erroneous exclusions of income from petitioners' 2001 returns on August 8, 2008. Respondent appears to have made a prima facie showing that the above requirements have been satisfied.

While not agreeing with respondent's position, petitioners do not directly contest whether these three requirements have been met. Instead, petitioners'

[*13] chief argument focuses on two additional conditions found in section 1311(b). These conditions, applicable and necessary under the circumstances herein, are as follows:

SEC. 1311(b). Conditions Necessary for Adjustment.--

(1) Maintenance of an inconsistent position.-- * * * [A]n adjustment shall be made under this part only if--

*     *     *     *     *     *     *

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

*     *     *     *     *     *     *

(3) Existence of relationship.--In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency * * * , the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a * * * claim for refund * * * for the taxable year with respect to which the determination is made * * *.

**[\*14]** Thus, to succeed respondent must also show that (1) JVC Trust (the taxpayer with respect to whom the determination was made) maintained a position that it was not liable for tax on the 2001 distribution income, as adopted in the IRS determination, which was inconsistent with the tax treatments (i.e., erroneous exclusions) of the JVC Trust distribution income for petitioners' 2001 tax years; and (2) petitioners were related to JVC Trust at the time it first maintained its inconsistent claim for refund position in 2006, as well as in 2001.  See id.; see also sec. 1313(c) (providing that the relationship must also have existed in the taxable year with respect to which the error was made).  See generally secs. 1.1311(b)-1(a), (c), 1.1311(b)-3(a), Income Tax Regs.

Respondent argues that JVC Trust's claim for refund, upheld by the IRS determination, effectively excluded the JH distributions as taxable income.  The JH distribution income, subsequently distributed by JVC Trust to two related beneficiaries, was thus attributable to petitioners in 2001.  Respondent therefore concludes that JVC Trust's claim was inconsistent with the existing exclusions of that income in petitioners' postexamination 2001 returns.

Petitioners contend that they filed JVC Trust's amended 2001 return merely to correct the error caused by the IRS examination.  Their interpretation of the mitigation provisions includes the belief that an "inconsistent position must be

[*15] actively maintained by the party against whom the Mitigation Statutes are asserted." Relying on Commissioner v. Estate of Weinreich, 316 F.2d 97, 102 (9th Cir. 1963), aff'g in part, rev'g in part Weinreich v. Commissioner, 37 T.C. 365 (1961), they propose that the mitigation provisions require them, as taxpayers, to have actively asserted a position inconsistent with the determination. Ultimately, they assert that they did not maintain any active inconsistent position and that they have not changed their positions since they originally filed their returns.

Petitioners misinterpret the mitigation provisions and misconstrue Weinreich as support for their position. Weinreich involved a husband and wife who each, on a separate return for tax year 1945, reported one-half of the income received by the wife as her distributive share of a partnership with her father and brother (partnership income). In 1948, the IRS determined a tax deficiency for the father for 1945 on the grounds, inter alia, that no valid partnership existed between him and his daughter at that time and therefore the partnership income was taxable to him. Accordingly, the IRS issued refunds in 1949 to the husband and wife for the taxes that they had paid on the 1945 partnership income. Though they had not requested these refunds, the husband and wife accepted them. The father paid some of the tax owed for 1945 and then filed claims for refund in 1950 and 1956,

**[*16]** which the IRS denied. The father ultimately prevailed in refund suits on the grounds, inter alia, that the IRS erred in refusing to recognize his daughter as a partner in 1945. As a result of having to refund the father's 1945 tax paid on the partnership income, the IRS sent related notices of deficiency for 1945 to the husband and wife in 1959. The husband and wife petitioned this Court, and, as the notices were otherwise untimely, the Commissioner attempted to invoke the mitigation provisions of the Internal Revenue Code of 1954. This Court ruled in favor of the husband but against the wife, resulting in their subsequent appeal of the decision.

As relevant here the Court of Appeals for the Ninth Circuit determined that there must be an "active inconsistent position" maintained by the taxpayer with respect to whom the determination was made (i.e., the father) that is contrary to the erroneous exclusion (i.e., the error that resulted in the refunds to his daughter and her husband). It held that the father's active inconsistent position first arose when he filed the claim for refund in 1950. Id. at 105 (clarifying that the earlier event of the daughter's acceptance of the refund could not be considered "active" inconsistency on the father's part). (While the Weinreich opinion states at 105 that the claim for refund was filed on March 13, 1959, we believe that to be a

**[\*17]** typographical error as an earlier reference to this fact at 100 states "March 13, 1950"--the latter being the more logical date given the chronology of events.)

The Court of Appeals also opined that the father's position, at the time he filed his claim for refund, was inconsistent with that of his daughter and her husband because they had accepted the refunds of the 1945 tax. Nevertheless, it concluded that the daughter was not related to the father's partnership as a partner in 1950; thus the mitigation provisions did not apply to her.

Like the husband and wife in Weinreich, petitioners, by signing Forms 4549 in January 2005 and accepting the refunds of March 21, 2005, adopted a position that tax on the distribution income should be paid at the entity (trust) level. Like the father in Weinreich, JVC Trust first maintained its inconsistent position, tax treatment of the distribution income at the beneficiary level, when it filed its claim for refund on or around November 13, 2006. For our purposes then, the compelling factor of Weinreich is the relationship (or lack thereof) of the taxpayers--that the daughter was not "related" as a partner to her father at the time he first maintained his inconsistent position. This is not the case with petitioners and JVC Trust.

Under the mitigation provisions a "related taxpayer" is, as relevant here, a taxpayer who stood in a fiduciary-beneficiary relationship with the taxpayer with

[*18] respect to whom a determination was made. Sec. 1313(c)(3). A beneficiary of a trust satisfies this definition. See Lovering v. United States, 49 F. Supp. 1, 2 (D. Mass. 1943) (determining, under predecessor section 3801 of the 1939 Internal Revenue Code, a relationship between a fiduciary trust and its beneficiary--even where the trust was treated as a corporation for tax purposes). As discussed supra, this relationship must have existed at both the time when the error was made, i.e., 2001, and at the time JVC Trust first maintained its inconsistent position, i.e. on or around November 13, 2006.

Petitioners do not dispute that they were related beneficiaries of JVC Trust in 2001 but argue that they were not related to JVC Trust in 2006. They allege that JVC Trust's final year of activity ended in 2003 and it could not have existed after that point. Citing no authority, they infer that JVC Trust terminated in 2003 because its 2003 Form 1041 was marked "final" and because it had distributed all of its assets. (Oddly, however, they appear at one point to concede the relationship with JVC Trust by their statement: "Petitioners did not stand in a Trust-Beneficiary relationship at the time of the Trust 2001 Amended Return, but for the erroneous actions of Respondent." (Emphasis truncated.))

On its face an argument that no relationship existed is untenable because JVC Trust, under the direction of petitioner as a trustee, filed its own amended

[*19] return in 2006, claiming the refund that resulted in this issue. Thus petitioners would have us believe the paradox that JVC Trust did not exist for "relation" purposes but did exist for "refund" purposes. Moreover, the termination of a trust does not depend "upon the technicality of whether or not the trustee has rendered his final accounting", sec. 1.641(b)-3(b), Income Tax Regs., although a trust can terminate upon fulfillment of its purpose, see Cal. Prob. Code sec. 15407(a)(2) (West 1991).

But even if the trust purpose had been fulfilled in 2003, which has not been shown, petitioner was still acting in her capacity as a trustee of JVC Trust when she directed the filing of the claim for refund in 2006 and when she received and deposited the refund check in 2009. See id. subdiv. (b) ("On termination of the trust, the trustee continues to have the powers reasonably necessary under the circumstances to wind up the affairs of the trust."); Sterling v. Sterling, 194 Cal. Rptr. 3d 867, 879 (2015) (equating Cal. Prob. Code sec. 15407(b) with Restatement, Trusts 3d, sec. 89 (2007), which states that "[t]he powers of a trustee do not end on the trust's termination date but may be exercised as appropriate to the performance of the trustee's duties in winding up administration, including making distribution, in a manner consistent with the purposes of the trust and the interests of the beneficiaries").

[*20] Petitioner, in filing the claim for refund in 2006 and administering the refund check in 2009, was performing her fiduciary duties as a trustee of JVC Trust for the benefit of petitioners as beneficiaries. Petitioners therefore would have retained their status as beneficiaries at least up to 2009 in order for them to receive, at that time, trust distributions of the refund (an event, as it appears, that would have wound up the last outstanding affair of JVC Trust). As there is no evidence that their beneficiary status had been interrupted at any time since the creation of JVC Trust, we conclude that there was an extant fiduciary-beneficiary relationship between JVC Trust and petitioners at the time JVC Trust first maintained its inconsistent position on or around November 13, 2006.

In summary we hold that (1) the IRS issued a determination regarding JVC Trust's claim for refund, which satisfies section 1313(a)(3)(A); (2) because the IRS determination accepted the claim for refund of JVC Trust, the correlating inclusion of taxable income had been erroneously excluded by petitioners as described in section 1312(5); (3) petitioners' 2001 returns, as of August 8, 2008, could not be adjusted by operation of law; (4) JVC Trust maintained a position adopted by the IRS determination and that position was inconsistent with the erroneous exclusions of petitioners' 2001 returns as modified; and (5) petitioners, as beneficiaries, were related to JVC Trust in 2001, the year of the error, and in

**[*21]** 2006 when JVC Trust first maintained its inconsistent position. Respondent has satisfied all requirements and conditions of the mitigation provisions, and the period of limitations for assessment is thereby extended up to one year from August 8, 2008, the date of the final determination. Consequently, the notices of deficiency respondent sent to petitioners on September 2, 2008, were timely, and petitioners' 2001 tax years are reopened for the limited purpose of correcting the section 1312(5) error.

Petitioners pose an alternative argument that reaches the conclusion "that the activities of the Trust and the Trustees resulted in deemed distributions occurring in the year 1998, thus rendering the issue of mitigation moot." Their theory appears to be that, pursuant to section 408(e)(2), some of the beneficiaries (and possibly the grantor) of JVC Trust in 1998 (and possibly 1993) engaged in prohibited transactions pursuant to section 4975 thus causing "deemed distributions" pursuant to section 408(d)(1) of all assets in the IRAs to the beneficiaries (and possibly the grantor), that is taxable for the year in which the ownership of the IRAs changed.

This argument is completely contrary to any previous and actual tax treatments adopted by petitioners and JVC Trust with regard to the JH distributions and related trust distributions. "The law should not be such 'a idiot'

**[*22]** that it cannot prevent a taxpayer from changing the historical facts from year to year in order to escape a fair share of the burdens of maintaining our government." Estate of Ashman v. Commissioner, 231 F.3d 541, 544 (9th Cir. 2000) (fn. ref. omitted; interior quotation marks inserted) (ruminating on the duty of consistency), aff'g T.C. Memo. 1998-145.  That insight is applicable here where, besides failing to cite a single authority to support their premise, petitioners fail to show that any prohibited transaction took place.

Although they do not specify which section 4975 prohibited transaction allegedly occurred, petitioners argue that the changing of beneficiary designations of their father's IRAs was nonetheless a prohibited transaction.  Nothing in the record, however, shows that the letters requesting these changes did anything other than to serve their intended purpose--to correct the mistakes in beneficiary designations, in accordance with petitioners' father's express intention, so that the IRA funds would be wholly distributed to JVC Trust as sole beneficiary of the IRAs.  Petitioners offer no evidence showing that the IRS somehow erred by implicitly accepting the IRA beneficiary adjustments when it accepted petitioners' 2001 returns or that petitioner, the other relevant beneficiaries, petitioners' father, and John Hancock Funds wrongly pursued the sought-after corrections in this manner.

**[\*23]** Petitioners also allege that a comingling of IRA and non-IRA assets occurred, thus resulting in prohibited transactions. Again, however, they have not directed our attention to any specific part of the record that proves this contention. Consequently, petitioners' alternative argument fails because of a lack of record evidence, and there is no need to test it by examining in depth sections 408 and 4975. See Arberg v. Commissioner, T.C. Memo. 2007-244, slip op. at 36 ("[W]ithout even delving into the host of legal strictures and requisites that would bear upon the applicability of petitioners' theories, the Court is satisfied that patent deficiencies in the underlying factual record would short circuit petitioners' attempts to reach their desired result through these avenues.").

We have considered other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or otherwise without merit. We do not consider petitioners' arguments raised for the first time in their answering brief. See Seligman v. Commissioner, 84 T.C. 191, 198-199 (1985) (observing that a party may not raise an issue for the first time on brief if the Court's consideration of the issue would surprise and prejudice the opposing party), aff'd, 796 F.2d 116 (5th Cir. 1986).

**[*24]**  To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.
